UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON HOLSAPPLE,

    Plaintiff,                                        Case No. 18-cv-11271
                                                      Honorable Thomas L. Ludington

vs.

TROY CUNNINGHAM,

    Defendant.
_____/

## **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This litigation arises from an ongoing conflict between Plaintiff and certain members of the Bay County Sheriff's department, Plaintiff's former employer. On April 23, 2018, Plaintiff Jason Holsapple filed a complaint against Defendant Troy Cunningham, the Bay County Sheriff. ECF No. 1. He claimed that Defendant violated his rights under the First Amendment and the Michigan Persons with Disabilities Civil Rights Act. *Id.* On May 17, 2018, Plaintiff filed an amended complaint adding three counts of defamation of character, false light invasion of privacy, and breach of contract. ECF No. 3. ECF No. 3. On June 1, 2018, Defendant filed an answer. ECF No. 6. The Court issued a scheduling order setting October 31, 2018 as the deadline for discovery. ECF No. 7.

On October 8, 2018, Defendant filed a motion for leave to amend his answer to Plaintiff's amended complaint. ECF No. 9 at 1. The proposed amended answer included a counterclaim alleging that Plaintiff violated the parties' settlement agreement from a prior case. *Id.* The motion was denied. ECF No. 12. On November 20, 2018, Plaintiff filed a motion to quash a subpoena and for a protective order. ECF No. 13. Plaintiff contended that Defendant issued an untimely

subpoena (after the close of discovery) to the Frankenmuth Police Department requesting records related to Plaintiff's employment with the department. *Id.* at 2. The motion was granted as unopposed but the request for a protective order was denied. ECF No. 15. Plaintiff also moved to compel production of certain documents, which was granted as unopposed. ECF Nos. 14, 22.

On December 21, 2018, Defendant moved for summary judgment. ECF No. 16. Plaintiff responded, and Defendant replied. ECF Nos. 21, 23.

## I.

In July 2011, the Bay County Sheriff's Department hired Plaintiff as a full-time Sheriff's deputy. In the 2012 Sheriff's primary election, Sheriff Miller faced opposition from a retired deputy, Robert "Bobby" Lee. Plaintiff supported Mr. Lee rather than the incumbent Sheriff Miller. Pl. Resp. Ex. 3 at 78, 80-82. Sheriff Miller won the election. On March 9, 2012, Sheriff Miller terminated Plaintiff's employment. *Id.* at 5. On April 5, 2012, Plaintiff filed a lawsuit against Sheriff Miller and Bay County. *Id.* Plaintiff alleged that his termination occurred because of his affiliation with the Sheriff's political opponent in violation of his First Amendment rights and the Michigan Constitution.

In the order denying the Defendants' motion for summary judgment, the Court held that there was a question of fact as to whether Sheriff Miller learned of Plaintiff's protected activity the day before he terminated Plaintiff. *Holsapple v. Miller*, No. 13-11039, 2014 WL 525391, at *6 (E.D. Mich. Feb. 10, 2014). If so, the Court held that the temporal proximity between Sheriff Miller learning of the protected activity and his decision to terminate Plaintiff was sufficient to satisfy Plaintiff's prima facie case for First Amendment retaliation. *Id.* The Court also held that there was a question of fact as to whether Sheriff Miller would have made the same decision to terminate Plaintiff absent the protected conduct. *Id.* at *7. The Court held that the Defendants

had not eliminated the factual dispute by claiming that Plaintiff was terminated "only after the Sheriff received numerous complaints from [Holsapple's] co-workers for reasons such as his negative attitude and disparaging and insubordinate remarks concerning the workplace, fellow deputies, command officers, the Sheriff and Bay County citizens." *Id.* The Court found that these allegations were in dispute. *Id.*

The case, however, was never tried. On the contrary, the parties settled the lawsuit in May 2014. *See id.* at 8; ECF No. 3-3 at 1. The settlement agreement itself is pertinent to the pending case for three primary reasons. First, it contains a mutual release of claims provision which released the parties of any actions:

> [A]rising out of his/her employment and separation therefrom with the Employer, including, but not limited to, any claim which the Employee has asserted, now asserts, or could have asserted, whether now known or unknown, whether now accrued or contingent, which HOLSAPPLE has, had, or may have against DEFENDANTS, arising out of any and all claims that were raised or could have been raised in the Litigation.

ECF No. 3-3 at 4–5.

Secondly, the settlement agreement limited Plaintiff's ability to seek employment with Bay County. It provides that Plaintiff would not "apply for or accept employment with the County of Bay or any office of the County of Bay, including but not limited to the Sheriff's office, at any time prior to December 31, 2016." ECF No. 3-3 at 3.

Thirdly, the agreement contains a non-disparagement clause. However, it provides little guidance as to its application. It does not address its actionability, associated damages, or scope. It reads:

> The parties hereby agree that they and their attorneys, agents, servants, representatives, affiliates, employees, elected and appointed officials, board members, trustees, administrators, successors and assigns shall refrain from defaming or disparaging, either orally or in writing, the reputations, characters, or businesses of any of the parties to the Litigation.

> The parties understand and agree that the covenant of non-disparagement contained herein is an essential and material part of this Agreement.

ECF No. 3-3 at 6–7.

In 2016, Plaintiff opposed then Undersheriff Cunningham in the general election for the Sheriff position. Pl. Resp. Ex. 22. Cunningham won the election. Throughout 2017, Plaintiff applied for multiple employment positions with Bay County. On January 4, 2017, he applied for a road patrol deputy position. Pl. Resp. Ex. 24. Some employees commented that it was "crazy" that Plaintiff applied. *Id.* Ex. 25. Sheriff Cunningham testified that he was shocked Plaintiff applied. *Id.* Ex. 27 at 10. Bay County posted several more positions to which Plaintiff applied over the course of several months. *Id.* Ex. 28-30. He did not receive an interview or response to any of these applications. When asked why, Cunningham testified: "just because I worked with him in the past, the county let him go prior to – you know, he'd been terminated from Bay County." *Id.* Ex. 27 at 11.

Cunningham further explained that while employed as a Bay County Sheriff's Deputy, Plaintiff had "a horrid attitude at our place, very negative, negative towards the other employees." *Id.* at 13. Plaintiff would allegedly greet his coworkers in the locker room by saying "welcome to hell;" and he allegedly "had no respect or didn't care at all for any of the command structure down there, myself included. I know he didn't like me and was apparently waiting to say, 'fuck you' to me for not giving him a rifle or something. He thought a lot of the deputies were lazy, didn't think command did a good job." *Id.* Cunningham testified, however, that he heard these complaints secondhand from another Deputy, not from Plaintiff himself, and never questioned Plaintiff about them. *Id.* Ex. 31 at 11-14. Although Plaintiff had several years of experience, multiple successful applicants for the road patrol positions had no experience other than graduating from the policy academy. *Id.* Ex. 27 at 18.

On April 23, 2018, Plaintiff filed his complaint in this case. ECF No. 1. He presented three counts, all centered on the fact that Defendant did not hire him despite his multiple applications in 2017. The first two counts claim that Defendant's refusal to consider his employment applications violated his First Amendment rights to political affiliation and exercise of free speech. Factually, Plaintiff contends that his right of free association and free speech were violated because of his "past support for the Robert Lee for Sheriff campaign," and his "Jason Holsapple for Sheriff campaign." Am. Compl. ¶ 92, ECF No. 3. He also contends, without further explanation, that his right of free association was violated by Cunningham because of Plaintiff's "perceived status as a political opponent of Sheriff Cunningham." *Id.*

Plaintiff alleges that Defendant subjected him to an adverse employment decision by failing to consider him for any of the nine road-patrol deputy positions for which he applied after December 31, 2016 (the date after which he was permitted to apply pursuant to the terms of the settlement agreement executed in the previous litigation). The third count claims that Defendant violated the Michigan Persons with Disabilities Civil Rights Act. *Id.* at 19–21. Plaintiff raises no claim of discrimination on the basis of his disability. Rather, he claims that Defendant refused to hire Plaintiff because Plaintiff filed a prior lawsuit against him under the Disabilities Civil Rights Act.

The next phase of the case involves its attorneys rather than the parties. Soon after Plaintiff filed the current lawsuit, the Bay City Times published an article entitled "Fired deputy who won $480,000 settlement sues sheriff for not rehiring him." ECF No. 3-2. Beneath the title is a photograph of Plaintiff and his attorney, Victor Mastromarco. The article describes the previous and current lawsuits that Plaintiff filed against Defendant. Plaintiff declined to

comment for the article, instead referring questions to Mr. Mastromarco. The article quotes Mr. Mastromarco as stating,

> This is a clear, plain case of retaliation by Cunningham…We insisted (when the prior lawsuits were settled) that he be able to reapply after Miller left since when our suit settled, Miller was still sheriff. Holsapple had the right to reapply, they agreed he had the right to reapply, and they better have a damn good reason why Holsapple did not get the job…People who have talked to (Holsapple) have said Cunningham has made statements that he's not going to hire Holsapple…It's not (Cunningham's) prerogative. His prerogative is being colored by Holsapple having filed a (prior) lawsuit against him.

*Id.* Defendant declined to comment for the article, instead referring questions to his attorney, Amber Davis-Johnson. She stated:

> The Bay County sheriff strongly denies the allegations in Mr. Holsapple's latest complaint [that he is refusing to consider Plaintiff's employment applications]…It is unfortunate that Mr. Holsapple continues to waste tax payer dollars on unsubstantiated lawsuits the sheriff's office and Bay County are forced to defend. The sheriff remains confident that Mr. Holsapple's complaint will be dismissed in its entirety and in short order. Despite Mr. Holsapple's assertions, the sheriff is under no obligation to re-hire previously discharged employees whose past work ethic and performance with the department suggest he would not best serve the Bay County citizens the sheriff's office is entrusted to protect.

*Id.*

On May 15, 2018, Plaintiff filed an amended complaint supplementing it with the factual allegations relating to the attorneys' public comments, and adding three counts of defamation of character, false light invasion of privacy, and breach of contract. ECF No. 3. Though the article quotes both Mr. Mastromarco and Ms. Davis-Johnson, Plaintiff claims that Ms. Davis-Johnson's statement violated the non-disparagement clause of the settlement agreement.

**II.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look

in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). "The party opposing summary judgment cannot rest on its pleading or allegations, to prevail, they must present material evidence in support of their allegations." *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) (citing *Celotex Corp v. Catrett*, 477 U.S. 317 (1986)). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.

### A.

Counts I and II allege that Defendant Cunningham retaliated against Plaintiff by failing to hire him because of his protected First Amendment activity, namely his political affiliation with Sheriff Lee, his participation in the 2016 general election, and his lawsuit against Cunningham. A prima facie case of First Amendment retaliation requires a plaintiff to show 1) he was engaged in a protected activity, 2) subject to an adverse action sufficient to discourage a person of ordinary firmness from engaging in that activity, and 3) the protected conduct was a substantial or motivating factor in the adverse decision. *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332 (6th Cir. 2010). Defendant's motion only challenges the third element.

If the plaintiff establishes a prima facie case, the defendants can avoid liability by showing that [they] would have taken the same action even in the absence of the protected

conduct. *Id.* Unlike the *McDonnel Douglas* burden-shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims.

Here, Plaintiff has not identified sufficient evidence upon which a reasonable jury could find that there was a causal connection between his protected activity ("his past support for the Robert Lee for Sheriff campaign, his Jason Holsapple for Sheriff campaign, and his perceived status as a political opponent of Sheriff Cunningham") and the decision not to hire him. First, Plaintiff argues as follows:

> First and foremost, Defendant Cunningham admitted that Plaintiff's protected activity, his prior lawsuit that directly named Cunningham as a defendant, influenced him. **(Ex. 27 at 26).** In other words, Defendant Cunningham admitted that Plaintiff's protected activity shaped his view of Plaintiff and, as such, his reasons for failing to hire him. This is tantamount to admitting that Plaintiff's protected activity was a factor in the decision to take adverse action.

Resp. at 12. Plaintiff cites to page 26 of Cunningham's deposition in which he testified as follows:

> Q: Well, you were named in the prior lawsuit, weren't you?
>
> A: Correct.
>
> Q: Did that influence your view of Jason at all?
>
> A: Yes

Cunningham Dep. at 26. As Defendant emphasizes, however, Plaintiff omitted the very next question:

> Q: So you would be able to put that behind you and work with him?
>
> A: Yes. If I thought he was a good candidate or wanted to hire him, yes.

*Id.* at 27. This testimony is by no means "tantamount to admitting that Plaintiff's protected activity was a factor in the decision to take adverse action," as Plaintiff contends. This testimony

does not support the inference that Plaintiff draws. To the contrary, the testimony was that, although Plaintiff's lawsuit against Cunningham "influenced [Cunningham's] view of [Plaintiff]," that Cunningham would have nonetheless put that behind him if he thought Plaintiff was a "good candidate."

Next, Plaintiff argues that Defendant's attorney called Plaintiff's lawsuit a "waste of taxpayer's dollars," (a statement which Plaintiff contends should be imputed to Defendant), and that Defendant himself called Plaintiff's political activities a "waste." Plaintiff contends these facts are relevant because "The Supreme Court found that an employer's reaction to legitimate protective activities to be relevant to establish discrimination." Resp. at 13 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805 (1973)). Plaintiff's citation to the seminal case on race discrimination for an incredibly broad statement of law in no way helps him establish the causation element of his prima facie case for First Amendment retaliation. The portion of the *McDonnel-Douglas* opinion to which he cites discusses the proposition that an employer's general policy and practice with respect to minority employment can be relevant to establishing pretext for race discrimination. The *McDonnell-Douglas* burden shifting framework, specifically the "pretext" stage, does not apply to a claim for First Amendment retaliation. Plaintiff makes no effort to explain how the *McDonnel-Douglas* framework applies here. That Defendant and/or his attorney called Plaintiff's earlier lawsuit and his political activities "waste" does not support the inference that Defendant had retaliated against Plaintiff by deciding not to hire him.

Plaintiff further argues that Defendant failed to give Plaintiff the veteran's preference that he was entitled to under Michigan Law. *Id.* (citing MCL § 35.401(1)). Plaintiff has not asserted a claim under Michigan's Veteran's Preference Act. He seeks no relief under that act, nor does it appear he could do so in light of the release he signed (insofar as that claim arises out of his 2012

termination). Plaintiff discusses the veteran's preference requirements at length but offers almost no discussion as to how the Defendant's alleged failure to follow the Veteran's Preference Act in 2012 is in any way relevant to his current claim for First Amendment retaliation.

Plaintiff offer's another broad statement of law in support of this argument: "The Sixth Circuit has found that an employer's failure to follow *certain policies* can constitute evidence of retaliation." (emphasis added). Plaintiff does not identify the "certain policies" he is referring to. Rather, he offers a string citation of Sixth Circuit case law, with no accompanying explanation as to how those cases are illustrative of the principle for which they are cited and, more importantly, how that principle applies in this case. The only supporting analysis Plaintiff offers is as follows: "Plaintiff respectfully submits that if one can infer retaliation from an employer's deviation from an internally adopted policy, by logical corollary, an employer's deviation of a legally mandated policy of preference would give rise to a stronger inference of retaliation." This line of argument is not sufficiently developed to warrant further discussion. *See United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developing argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.").

Plaintiff also argues that there is a triable issue of fact for free speech and free association retaliation because he can show 1) that his qualifications were so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former, or 2) that he was as qualified or better qualified than the successful applicant and the record also contains other probative evidence of discrimination. Resp. at 14 (citing *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626-627 (6th Cir. 2006).

*Bender* involved an ADEA claim for failure to transfer employees to a more desirable

position. The portion of the opinion to which Plaintiff cites compared the relative qualifications between the complainant and the successful applicants for the purpose of determining whether the employer's proffered reason for its decision was pretextual. As noted above, in contrast to an ADEA claim, the *McDonnel-Douglas* burden shifting framework does not apply to a First Amendment retaliation claim. Notably, neither party appears to have located any Sixth Circuit case law specifically addressing a First Amendment retaliation claim predicated on failure to hire.

Assuming that the 2-part test Plaintiff extracts from *Bender* (for comparing relative qualifications) applies to the causation element of Plaintiff's prima facie case for First Amendment retaliation, Plaintiff still fails that test. The evidence does not support the notion that Plaintiff's qualifications were so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the successful road patrol applicants over Plaintiff. Plaintiff makes much of the fact that he had approximately five years of law enforcement experience while the successful applicants had almost none. However, Plaintiff overlooks the fact that he was terminated from his last position as Deputy Sheriff with Bay County. Indeed, Defendant identified this as one of the reasons Plaintiff was not considered for the positions. Resp. Ex. 27 at 11.

Although this Court held (in the earlier settled litigation) that there was a material question of fact as to the propriety of the 2012 termination, no determination was made that the termination was unlawful. Plaintiff emphasizes that Sheriff Cunningham testified that, when he was working as a Lieutenant with Plaintiff, he did not have any problems with him and did not know why he was terminated by Sheriff Miller. Resp. at 15. Irrespective of whether Sheriff Cunningham knew of the reasons for that termination or personally had any problems with

Plaintiff, there is no apparent reason why Plaintiff's termination was not a relevant fact for Cunningham to have considered in comparing Plaintiff to the other road patrol applicants.[1] Neither Conley, Hawkins, nor Jobes (the comparators Plaintiff identifies) had ever been fired from a previous job. Thus, Plaintiff certainly was not significantly more qualified than them. To the extent Plaintiff could argue he was "as qualified" as the other applicants, he has identified no other probative evidence of retaliation. *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626-627 (6th Cir. 2006).

Plaintiff also contends that Cunningham had a more positive view of him before he sued him in the earlier case. Plaintiff cites *Lamer* for the proposition that "where an employer treats an employee differently after he asserts his rights than before he had done so, a retaliatory motive may be inferred." Resp. at 15 (quoting *Lamer v. Metaldyne Co. LLC*, 240 F. App'x 22, 32 (6th Cir. 2007). Cunningham was not Plaintiff's employer nor was he the decision maker with respect to the previous termination. After the termination, Plaintiff was no longer an employee. Thus, *Lamer* is inapposite. Simply put, Cunningham's testimony that he had no personal problems with Plaintiff when he was Deputy Sheriff in 2012 does not support an inference that Cunningham retaliated against him in 2017 by not hiring him.

Finally, Plaintiff refers broadly to the "pattern of retaliatory behavior engaged in by Sheriff Cunningham" to support his causation theory. Resp. at 15-16. Plaintiff claims that "in

---

[1] Plaintiff also emphasizes the following provision in the release: "Holsapple further agrees not to apply for or accept employment with the County of Bay, including but not limited to, the Sheriff's office, at any time prior to December 31, 2016." This provision does not entitle Plaintiff to employment after Dec. 31, 2016. Rather, it simply provides that he is barred from seeking such employment with the County until after that date. Nor does that provision provide that the County must disregard Plaintiff's prior employment history (including his termination) when making its decision on whether to hire him. Plaintiff appears to assume, without support, that he should have been on equal footing with the other applicants after December 31, 2016. The fact that Defendant is prohibited from considering Plaintiff's protected speech and association when making an employment decision does not mean that Plaintiff was on equal footing with the other applicants. Plaintiff's termination and his protected activity are not one in the same. Rather, he alleged he was terminated *because of* his protected activity. That issue was never resolved, as a settlement was reached before trial.

and during the pendency of the initial legal proceedings, then Lieutenant Cunningham went to media reporters, claiming that Plaintiff was terminated for insubordination, even though Defendant now admitted in testimony that he did not know the reasons Sheriff Miller terminated Plaintiff." Resp. at 16. There is no citation to the record to support this assertion.

Next, Plaintiff contends that Sheriff Cunningham "sought to influence hiring decisions in Essexville . . ." *Id.* at 16. Cunningham testified that he contacted Lt. House of Essexville asking whether William Gutzwiller (who was being considered for the position of Essexville Director of Public Safety) would be hiring Plaintiff as an officer. Resp. Ex. 27 at 19. Plaintiff explains that "Chief Gutzwiller testified that Lt. House informed him that Cunningham urged Lt. House to become chief and further had voiced concern that if Gutziller was employed by the City, he may hire Plaintiff and/or Mike Jarabek, another political opponent of the sheriff's." Resp. at 9 (citing Ex. 33 at 4-5). First, Chief Gutzwiller's testimony involves two layers of hearsay (Lt. House told me that Cunningham told him ....), which is inadmissible to prove the truth of the matter asserted in the statement (that Cunningham did indeed urge House to become Chief so that Gutziller wouldn't hire Plaintiff).

Moreover, even if the statement was admissible, Plaintiff's claim is not for tortious interference with a business expectancy or a similar claim. That is, he does not assert that Cunningham's contact with the city of Essexville is actionable in and of itself. Rather, he contends that it is evidence that Cunningham does not think highly of him, from which one could infer a general propensity for retaliatory behavior toward Plaintiff. This inference is not justified; the communication between Cunningham and Lt. House is insufficiently connected to Cunningham's decision not to hire Plaintiff as a road patrolman.

Finally, Plaintiff argues that additional evidence supports causation, namely that Sgt. Spencer (another political opponent of Cunningham) was also passed over for the road patrol positions, and that Cunningham refused to send deputies to training at Delta College where he worked. That Cunningham did not want deputies to train at Delta College has some tangential relevance to Cunningham's opinion of Plaintiff generally. However, it does not support the inference that his decision not to hire Plaintiff was in retaliation for Plaintiff's "past support for the Robert Lee for Sheriff campaign, his Jason Holsapple for Sheriff campaign, and his perceived status as a political opponent of Sheriff Cunningham." Am. Compl. ¶ 92.

That Sgt. Spencer (Cunningham's opponent in the Democratic Primary election) was also passed over for a road patrol position is perhaps the only evidence that supports the inference Plaintiff attempts to draw regarding retaliation. However, Plaintiff must identify more than a scintilla of evidence in support of his claims to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

To summarize, Plaintiff presents the following facts in support of his causation theory: 1) Cunningham testified that the fact that Plaintiff previously sued him "influenced [his] view" of Plaintiff, but he would be able to put that behind him if Plaintiff was a good candidate[2]; 2) Cunnigham and/or his attorney called Plaintiff's lawsuit a waste of taxpayer money; 3) the road patrolmen who were hired had little to no experience but had never been terminated from a job, whereas Plaintiff had substantial experience but had been terminated from his position as Deputy Sheriff; 4) Cunningham testified that he had no problems with Plaintiff when Cunningham was his Lieutenant[3]; 5) Cunnigham contacted Lt. House of Essexville to inquire as to whether the new director would hire Plaintiff; 6) Cunningham did not hire Sgt. Spencer (his political

---
[2] Plaintiff omitted the second half of this testimony from his brief.
[3] This is Plaintiff's version of the testimony, and it is unclear if it is accurate. He cites to page 19 of exhibit 31, which is not attached to his brief.

opponent) for road patrol; 7) Cunningham did not send deputies to Delta College for training (where Plaintiff was an instructor). Although some of these facts could have some tangential relevance to Cunningham's assessment of Plaintiff generally as a prospective employee, no reasonable jury could find on these facts that Plaintiff's protected First Amendment activity (as set forth in ¶ 92 of his complaint[4]) was a substantial or motivating factor in the decision not to hire Plaintiff.

Because the Court concludes that there is insufficient evidence to support the existence of a First Amendment violation, the Court will not address qualified immunity nor will the Court address whether there is sufficient evidence to support municipal liability. Counts I and II will be dismissed.

**B.**

Count III alleges retaliation in violation of the Michigan Persons with Disabilities Civil Rights Act. ECF No. 3 at 20. To establish a prima facie case of retaliation under the Act, a plaintiff must show: (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Aho v. Dep't of Corrections,* 236 Mich. App. 281, 288-289; 688 N.W.2d 104 (2004).

Here, the protected activity identified by Plaintiff is the fact that he previously filed an entirely different lawsuit which alleged disability discrimination. The state court dismissed that lawsuit because Plaintiff had not met his burden to show that his alleged/perceived impairment qualified as a disability. ECF No. 17-5. Defendant argues that Plaintiff is barred from relitigating

---

[4] The Court did not determine (in this case or in the previous case) the extent to which Plaintiff was engaged in protected activity. Rather, the Court is limited to the arguments presented by the parties, and Defendant only challenged the third element of Plaintiff's prima facie case (causation). They did not argue, for example, that a political patronage dismissal was potentially permissible in this context.

that determination and that the prior lawsuit does not qualify as protected activity. Plaintiff contends that the prior lawsuit was protected activity irrespective of whether it was meritorious. Regardless of who is correct, Plaintiff's claim fails. Plaintiff has identified no evidence of a connection between his PWDCRA lawsuit and Cunningham's decision not to hire him. Count III will be dismissed.

### C.

Counts IV-VI allege defamation of character, false light invasion of privacy, and breach of contract arising out of statements made by Defendant's attorney. Soon after Plaintiff filed the current lawsuit, the Bay City Times published an article entitled "Fired deputy who won $480,000 settlement sues sheriff for not rehiring him." ECF No. 3-2. Beneath the title is a photograph of Plaintiff and his attorney, Victor Mastromarco. The article describes the previous and current lawsuits that Plaintiff filed against Defendant. Plaintiff declined to comment for the article, instead referring questions to Mr. Mastromarco. The article quotes Mr. Mastromarco as stating,

> This is a clear, plain case of retaliation by Cunningham…We insisted (when the prior lawsuits were settled) that he be able to reapply after Miller left since when our suit settled, Miller was still sheriff. Holsapple had the right to reapply, they agreed he had the right to reapply, and they better have a damn good reason why Holsapple did not get the job…People who have talked to (Holsapple) have said Cunningham has made statements that he's not going to hire Holsapple…It's not (Cunningham's) prerogative. His prerogative is being colored by Holsapple having filed a (prior) lawsuit against him.

*Id.* Defendant declined to comment for the article, instead referring questions to his attorney, Amber Davis-Johnson. She stated:

> The Bay County sheriff strongly denies the allegations in Mr. Holsapple's latest complaint [that he is refusing to consider Plaintiff's employment applications]…*It is unfortunate that Mr. Holsapple continues to waste tax payer dollars on unsubstantiated lawsuits the sheriff's office and Bay County are forced to defend.* The sheriff remains confident that Mr. Holsapple's complaint will be dismissed in

its entirety and in short order. Despite Mr. Holsapple's assertions, the sheriff is under no obligation to re-hire previously discharged employees *whose past work ethic and performance with the department suggest he would not best serve the Bay County citizens the sheriff's office is entrusted to protect.*

*Id.* (emphasis added).

A prima facie case of defamation requires a showing: "(1) that the defendant made a false and defamatory statement concerning the plaintiff, (2) that the defendant published the defamatory statement to a third party, (3) that the defendant was at least negligent in publishing the statement, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication (defamation per quod)." *Colista v. Thomas*, 241 Mich. App. 529, 538 (2000).

To establish false light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and painted the plaintiff in a false light. *Porter v Royal Oak*, 214 Mich. App. 478, 486–487; 542 (1995)

The parties debate whether defense counsel's statement can be imputed to Defendant himself under agency principles, or whether the attorney is the true party in interest with respect to Plaintiff's claims. They also debate whether Defendant is entitled to absolute immunity for the statements, and whether Plaintiff can establish a factual question regarding malice. These claims will be dismissed for a more basic reason: defense counsel's statements are not assertions of fact. They cannot be proven false, as required to sustain the defamation and false light counts.

The statements placed in issue may be summarized as follows: 1) Plaintiff wastes taxpayer dollars on unsubstantiated lawsuits; 2) Plaintiff's past work ethic and performance with the department suggest he would not best serve the Bay County citizens. Whether Plaintiff's

- 17 -

lawsuits are a waste of tax payer money or a good use of tax payer money is not subject to objective factual analysis, nor is the question of whether the lawsuits are "substantiated". These questions cannot be conclusively resolved. Similarly, whether Plaintiff's "past work ethic and performance suggest he would not best serve the Bay County citizens" is not a statement that can be proven false. Plaintiff contends that his "past performance and work ethic are subject to factual analysis . . . one can factually determine whether Plaintiff in fact had a bad attitude, performed poorly, or displayed an insufficient work ethic so as to be unable to serve the county." Resp. at 24. But "bad," "poor," and "insufficient" are all opinions. Moreover, Ms. Davis-Johnson did not use the words "bad attitude," "poor performance" or "insufficient work ethic." Rather, she said his "past work ethic and performance suggest he would not best serve the Bay County citizens." Whether his work ethic and performance suggest he would best serve the Bay County citizens is not a question that can be conclusively resolved as true or false.

The breach of contract claim is predicated on the same statements. The release prohibits either party from "defaming or disparaging" the other. As discussed, above, Defendant did not defame Plaintiff because the statements cannot be proven false. The release also prohibits "disparagement." Defendant does not offer a definition of the word "disparagement." Plaintiff offers definitions from Black's law dictionary which suggest that disparaging remarks must also be false. Thus, for the same reasons discussed above, Defendant's comments were not disparaging.

The parties dispute whether the "the first breach rule" applies here. That rule provides that "he who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform." *Mc Cary v. Mercury Meta/craft Co.,* 372 Mich. 567, 573; 127 NW2d 340 (1964). Plaintiff contends that Defendants

have not established that his remarks were false and, therefore, the first breach rule does not apply. In short, Plaintiff's own definition of "disparagement" is equally applicable to his attorney's statements as it is to Defense counsel's statements. Plaintiff's counsel stated that "This is a clear, plain case of retaliation by Cunningham." As discussed above, little if any evidence has been identified by Plaintiff that Cunningham's decisions were caused by Plaintiff's support for Sheriff Lee, his previous lawsuit, or his decision to run against Defendant Cunningham. Thus, adopting Plaintiff's broad view of what it means for a statement to be "false", Plaintiff's counsel's statement is, at a minimum, equally as disparaging as Defense counsel's statement (although the Court is of the opinion that neither statement is defamatory or disparaging). Counts IV-VI will be dismissed.

**IV.**

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment, ECF No. 16, is **GRANTED**.

It is further **ORDERED** that the complaint, ECF No. 3, is **DISMISSED** with prejudice.

    s/Thomas L. Ludington
    THOMAS L. LUDINGTON
    United States District Judge

Dated: February 15, 2019